IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALLSTATE INSURANCE COMPANY**<br><br>**2775 SANDERS ROAD**<br>**NORTHBROOK, IL, 60062**<br><br>        **Plaintiff**<br>   v.<br><br>**ELECTROLUX HOME PRODUCTS, INC.**<br><br>**10200 David Taylor Drive**<br>**Charlotte, NC 28262**<br><br>        **Defendant** | **Civil Action No.**<br><br>**JURY DEMANDED** |

## COMPLAINT

Plaintiff, by and through its counsel, de Luca Levine LLC, hereby demand judgment against the above-named defendant and, in support thereof, alleges the following:

## PARTIES

1. Allstate Insurance Company ("Allstate" or "Plaintiff"), a citizen of the State of Illinois, is a business entity organized and existing under the laws of Illinois and maintains its principal place of business at the above-captioned address.

2. Allstate, acting by and through its underwriting companies, issued policies of insurance ("Policies") to the individuals identified in Appendix A ("Insureds").

3. As a result of a dryer fire, Allstate's Insureds suffered covered losses at the locations and on the dates identified in *Appendix A*, subsequently made claims against the respective Policies and were indemnified by Allstate for their covered losses.

1

4. Allstate is subrogated to the rights and interests of the Insureds to the extent of Allstate's payments, which total more than $75,000.00, exclusive of interest, fees and costs.

5. Defendant, Electrolux Home Products, Inc. ("Electrolux" or "Defendant"), a citizen of North Carolina and Delaware, is a business entity organized and existing under the laws of Delaware with its principal place of business at the above-captioned address.

6. Electrolux is a manufacturer of home appliances who regularly transacted business in the Commonwealth of Pennsylvania at all relevant times.

## JURISDICTION AND VENUE

7. All preceding allegations are incorporated herein by reference as though set forth at length.

8. Pursuant to 28 U.S.C. § 1332, subject matter exists because Allstate and Electrolux are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest, fees, and costs.

9. Personal jurisdiction exists because the Electrolux purposefully availed itself of the benefit of the laws of this judicial district by regularly transacting and/or conducting business in the territorial jurisdiction of this United States District Court, which is located in the Commonwealth of Pennsylvania.

10. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## FACTS

11. All preceding allegations are incorporated herein by reference as though set forth at length.

12. Each claim described in *Appendix A* arose from a fire caused by normal and ordinary use of a ball-hitch clothes dryer that was designed, manufactured, distributed, and sold into the stream of commerce by Electrolux.

13. Electrolux's ball-hitch dryers are defective. The dryers cause lint to accumulate and ignite behind the drum during normal use. Plastic construction of internal components exposed to flame during operation exacerbates the risk of internal fire-spread. Ignition of internal plastic components during use can cause smoke and flame to escape the ball-hitch dryer cabinet and cause substantial injury, death or property damage.

14. Electrolux's ball-hitch dryers are unreasonably and unnecessarily dangerous.

15. Electrolux could have and should have substantially reduced or eliminated the risk of fire ignition and fire-spread within the dryer cabinet during ordinary and normal use by making simple, feasible and proven design changes.

16. For example, by using an available, alternative design, Electrolux could and should have eliminated the ability of lint to accumulate in the hidden space behind the drum where ignition often occurs in its ball-hitch dryer during ordinary and normal use.

17. Electrolux, moreover, could and should have substantially reduced or eliminated the ability of an internal fire to spread internally and, eventually, escape the confines of the dryer cabinet by constructing internal air ducts and assemblies from metal rather than combustible plastics.

18. Electrolux knew that internal cabinet fires were likely to occur during normal and ordinary ball-hitch dryer use when it manufactured and distributed the subject

3

dryers, but ignored the problem in conscious or reckless disregard to the rights and safety of consumers, including the Insureds.

19. Electrolux never warned consumers, including the Insureds, about the ball-hitch dryer's propensity to ignite and spread fire internally during normal and ordinary use.

20. Electrolux, instead, only distributed standard warnings with its ball-hitch dryers, which were applicable to dryers generally and did not account for, address or otherwise warn users about latent fire hazards associated with normal and ordinary use of the ball-hitch dryer.

21. Electrolux failed to provide ball-hitch dryer users, including the Insureds, with all information necessary to correctly disassemble and clean the dryer's components, even though Electrolux secretly deemed that procedure necessary to occur at least every 18 months to ensure safe operation of its ball-hitch dryer.

22. Electrolux concealed the scope of the defective nature of its dryers since it began distribution as early as 1988.

23. Since 1988, Electrolux has settled thousands of dryer fire claims confidentially, often ordering the destruction of evidence as a term of settlement.

24. Electrolux failed to report thousands of dryer fires to the United States Consumer Product Safety Commission, despite being obligated to do so per the Consumer Product Safety Act.

25. The Japanese government banned Electrolux from distributing the defective ball-hitch dryers in Japan in 2004 because of fires caused by the defects described above, yet Electrolux continued to distribute the defective dryers for sale in the United States.

26. In 2007, Electrolux quietly began building a different kind of freestanding dryer in Mexico for distribution in the United States. This dryer, known as a bulkhead design, is substantially the same design as that built by Electrolux's competitors since the 1960s. The bulkhead dryer substantially reduces or eliminates the risk of internal fire by reducing lint accumulation in hidden spaces adjacent to heat sources during use.

27. Since 2007, Electrolux is aware of only a handful of allegations of internal lint fires involving bulkhead dryers versus more than 6,000 alleged ball-hitch fires.

28. By 2011, Electrolux ceased manufacturing ball-hitch dryers in the United States entirely.

29. By 2014, Electrolux closed its U.S. plant, demolished the factory and terminated all but a few U.S. employees directly involved with the ball-hitch dryer's design and construction.

30. Today, all dryers manufactured by Electrolux are capable of containing an internal fire originating in the dryer drum or dryer base – a performance capability formally proposed by the Association of Home Appliance Manufacturers ("AHAM," of which Electrolux is a voting member) in 2002.

31. Electrolux knew how to build fire-containing dryers in 2002 at little or no additional cost, but refused to incorporate that performance capability until 2013, when a third-party listing agency required the change in order for Electrolux to maintain its listing.

32. As a direct and proximate the result of the defects, acts and omissions described above, dryer fires occurred and Allstate was required to make payment on the claims as described in *Appendix A*.

## COUNT I – STRICT LIABILITY
## PLAINTIFF v. ELECTROLUX

33. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

34. Electrolux was engaged, in the business of designing, testing, inspecting, assembling, manufacturing and distributing clothes dryers, and their component parts, and specifically designed, tested, inspected, assembled, manufactured, distributed and placed into the stream of commerce the subject dryers at issue in this case.

35. The subject dryers, distributed into the stream of commerce by Electrolux, were not modified, changed, altered or abused by Plaintiff's subrogors or other users at said properties prior to or during their use.

36. Electrolux knew and intended that its dryers would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said dryers would be utilized.

37. Electrolux designed, tested, inspected, manufactured, sold and/or distributed into the stream of commerce the subject dryers, including their component parts, in a dangerous defective condition, which catastrophically failed due to a defect that could not have been discovered by its users in the exercise of reasonable care.

38. Electrolux designed, tested, inspected, manufactured, sold and/or distributed into the stream of commerce the subject dryers in a defective condition, unreasonably dangerous to Plaintiff's subrogors and their properties and/or not merchantable and reasonably suited to the use intended by Plaintiff's subrogors for their properties.

6

39. Electrolux knew, or should have known, that the subject dryers would, and did, reach Plaintiff's subrogors without substantial change in the condition in which they were originally selected and sold.

40. The subject dryers were not materially altered in anyway which would affect the dangerous conditions caused and created by Electrolux.

41. The subject dryers were dangerous and defective at the time they left the control of Electrolux because:

    a. the subject dryers were designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

    b. the subject dryers were designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

    c. the subject dryers were designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

    d. the subject dryers were designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

    e. the subject dryers were designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

7

f.  the subject dryers were designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

g.  the subject dryers were designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

h.  the subject dryers were designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

i.  the subject dryers were designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

j.  the subject dryers were designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

k.  the subject dryers were designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

l.  the subject dryers were designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

m.  the subject dryers were designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

8

- n. the subject dryers are designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

- o. the subject dryers were designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

- p. the subject dryers are dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

- q. probability of injury times the gravity of injury under the current design of the subject dryers is more than the cost of an alternative reasonable design plus the diminished utility resulting from modifying the design;

- r. the foreseeable risks of harm posed by the subject dryers could have been reduced or avoided by the adoption of a reasonable alternative design(s) by the seller and the omission(s) of the alternative design(s) renders the subject dryers not reasonably safe;

- s. common experience teaches that the fire would not have occurred in the subject dryers in the absence of a defect; and

- t. the foreseeable risks associated with the design of the subject dryers exceed all benefits.

42. The aforementioned defects or defective conditions existed at the time the subject dryers left the possession and/or control of Electrolux and, at that time, practical and technically feasible alternative production practices were available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others.

43. The defective, unreasonably dangerous and unsafe condition of the subject dryers as aforesaid was a direct and proximate cause of the damages sustained by Plaintiff.

44. For these reasons, Electrolux is strictly liable to Plaintiff under applicable law.

45. As a direct and proximate result of one or more of the aforementioned defective and unreasonably dangerous conditions, the subject dryers ignited and burned inside the subject properties, causing extensive damage to Plaintiff's subrogors' real and personal property and the imposition of additional hardship besides, and caused other consequential and incidental damages including clean-up costs, repair, and other associated expenses.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in its favor and against Defendant, Electrolux Home Products Inc., plus interest, delay damages, punitive damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT II – NEGLIGENCE
### PLAINTIFF v. ELECTROLUX

46. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

47. At all times material hereto, Electrolux had a duty to exercise reasonable care in the design, manufacture, and distribution of the subject dryers and breached said duty.

48. Upon information and belief, Electrolux breached its duty of care by, among other things, negligently, carelessly and recklessly designing, manufacturing, testing, inspecting and distributing the subject dryers.

49. Upon information and belief, Electrolux's negligent, careless, reckless, willful and wanton acts and omissions included, but are not limited to:

10

a. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source of the clothes dryer so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

b. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers with a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum;

c. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers so that particles of lint that accumulate and ignite within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

d. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers in a manner that accumulates lint in areas within the subject dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

e. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers in a manner that lint accumulates in areas within the clothes dryer that are not serviceable by the user;

f. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers with combustible plastic components, within which components it was foreseeable that lint would accumulate and ignite a fire when the particles of the lint came into contact with the clothes dryer's gas or electric heat source;

g. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers without any way to contain a fire which may ignite;

h. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers without conducting any fire risk studies on the design of the product;

i. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers without conducting any lint accumulation studies during the design of the product;

11

j. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers without conducting any fire risk studies on the design of the product;

k. Carelessly, negligently and recklessly failed to advise or instruct appliance service personnel of a need to dismantle the subject dryers and to remove lint from behind the dryer drum and from within the combustible plastic air duct and blower housing;

l. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers without adequate warning to the user that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

m. Carelessly, negligently and recklessly designed, manufactured and sold the subjects dryer without any warnings contained on the clothes dryer that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and /or blower housing, which areas are not visible to or serviceable by the user;

n. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the clothes dryer;

o. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

p. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

q. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

r. Carelessly negligently and recklessly failed to advise the user of the necessity to remove the dryer drum of the subject dryers and remove all lint from behind the dryer drum;

s. Carelessly, negligently and recklessly failed to issue a service bulletin on the subject dryers on the necessity to remove the dryer drum of the clothes dryer and remove all lint from behind the dryer drum;

t. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers that are dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

u. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers where the probability of injury times the gravity of injury under the current product design is more than the cost of an alternative reasonable design plus the diminished utility resulting from modifying the design;

v. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers where the foreseeable risks of harm posed by the subject dryers could have been reduced or avoided by the adoption of a reasonable alternative design(s) by the seller and the omission(s) of the alternative design(s) renders the subject dryers not reasonably safe; and

w. Carelessly, negligently and recklessly designed, manufactured and sold the subject dryers where the foreseeable risks associated with the design of the subject dryers exceed all benefits.

50. As a direct and proximate result of Electrolux's negligent, careless, reckless, willful and wanton actions, and/or omissions Plaintiff sustained damages and Electrolux is therefore liable to the Plaintiff for the damages suffered.

51. As a direct and proximate result of one or more of the aforementioned defective and unreasonably dangerous conditions, the subject dryers ignited and burned at the subject properties, causing extensive property damage, and caused other consequential and incidental damages including clean-up costs, repair, and other associated expenses.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against Defendant, Electrolux Home Products Inc., plus interest, delay damages, punitive damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

Respectfully submitted,

**de LUCA LEVINE LLC**

BY: *Patrick A. Hughes*
RAYMOND E. MACK, ESQUIRE
PA ID No.: 91815
E-Mail: rmack@delucalevine.com
PATRICK A. HUGHES, ESQUIRE
PA ID No.: 91415
E-Mail: phughes@delucalevine.com
512 Township Line Road, Suite 220
Blue Bell, PA 19422
Telephone: (215) 383-0081
Fax: (215) 383-0082
COUNSEL FOR PLAINTIFF

|   | Company | Insured | Date | Address | Amount |
|---|---|---|---|---|---|
| a. | Allstate Indemnity Company | James, Tamonica and Donald | 4/11/2017 | 308 Viola Avenue Saraland, Alabama | $9,397.01 |
| b. | Allstate Insurance Company | Gariba, Priyanka and Ajmera, Varun | 3/5/2017 | 337 S. Freemont St., Apt. 402 San Mateo, California | $16,164.94 |
| c. | Allstate Insurance Company | Loganaathan, Arujunaa and Reddy, Mala | 10/17/2017 | 2115 Broadway Street San Francisco, California | $11,349.37 |
| d. | Encompass Insurance | Maple Villas Main. Corp. HOA | 9/6/2016 | 11054 Maple Street Los Alamitos, CA 90720 | $20,000.00 |
| e. | Allstate Insurance Company | Werkhoven, Luke and Corby, Tiffany | 3/21/2017 | 525 El Sueno Road Santa Barbara, California | $415,183.86 |
| f. | Allstate Insurance Company | Zimmerman, Kristen / Bloch, Adrienne | 12/21/2017 | 2356 Monticello Avenue Oakland, California | $7,275.03 |
| g. | Castle Key Indemnity Company | Adams, Tabitha | 4/15/2015 | 16364 Compton Palms Drive, Hillsborough, Florida | $5,730.72 |
| h. | Castle Key Indemnity Company | Cooke, Brandi | 9/4/2016 | 1105 Fort Clarke Boulevard Gainesville, Florida | $9,492.28 |
| i. | Castle Key Indemnity Company | Pyle, Jack L. | 9/12/2015 | 126 1st Street East, Unit 109 Terra Verde, Florida | $108,375.00 |
| j. | Castle Key Indemnity Company | Tapia, Richard | 7/26/2016 | 2537 Lake Ellen Tampa, Florida | $243,599.42 |
| k. | Castle Key Indemnity Company | Vance, Wendy and Travis | 4/21/2014 | 2750 Old St. Augustine Road Apartment G62 Tallahassee, Florida | $25,812.29 |
| l. | Allstate Insurance Company | Braswell, June | 11/18/2017 | 105 Island Street Statesboro, Georgia | $210,310.00 |
| m. | Allstate Indemnity Company | Harry, Renee | 3/13/2015 | 1621 Riverside Trail Conyers, Georgia | $70,384.87 |
| n. | Allstate Property and Casualty Insurance Company | Jackson, Reginald | 4/25/2014 | 805 Pannell Road Monroe, Georgia | $1,008.27 |
| o. | Allstate Vehicle and Property Insurance Company | Pollock, Leon and Jeanella | 4/27/2015 | 4649 Clarks Creek Lane Ellenwood, Georgia | $25,132.15 |
| p. | Allstate Property and Casualty Insurance Company | Priester, Dwayne | 4/5/2014 | 1105 Johns Landing Court Lawrenceville, Georgia | $261,479.09 |
| q. | Allstate Fire and Casualty Insurance Company | Robeson-El, El Malik | 9/27/2015 | 1798 Sandy Trail Drive Hampton, Georgia | $178,373.68 |
| r. | Allstate Property and Casualty Insurance Company | Ross, Margaret | 10/28/2015 | 770 Robby Street Monticello, Georgia | $67,493.26 |
| s. | Allstate Fire and Casualty Insurance Company | Staten, Lashunda and John | 3/9/2017 | 5003 Addison Trail Statesboro, Georgia | $233,357.94 |
| t. | Allstate Property and Casualty Insurance Company | Strother, Leah | 2/19/2014 | 4121 Conley Pond Court Decatur, Georgia | $111,474.08 |
| u. | Allstate Vehicle and Property Insurance Company | Talley, Michael W. and Nichelle | 3/26/2017 | 1892 Holcomb Road Ringgold, Georgia | $45,000.00 |
| v. | Allstate Fire and Casualty Insurance Company | Walker, Jackie | 11/19/2014 | 380 Highway 279 Fayetteville, Georgia | $124,603.37 |
| w. | Allstate Vehicle and Property Insurance Company | Barnett, Stephen and Susan E. | 9/21/2017 | 17221 70th Avenue Tinley Park, Illionois | $59,849.79 |
| x. | Allstate Indemnity Company | Barra, Lori | 12/11/2016 | 2082 N. Charter Point Drive Arlington Heights, Illinois | $28,455.18 |
| y. | Allstate Indemnity Company | Byreddy, Narendar and Lavanya | 12/7/2016 | 1180 South Parkside Drive Palatine, Illinois | $47,478.30 |

# Appendix "A"

| | | | | | |
|---|---|---|---|---|---|
| z. | Allstate Indemnity Company | Dempsey, Daniel and Jacqueline | 9/12/2017 | 21W218 Glen Park Road Lombard, Illinois | $4,527.65 |
| aa. | Allstate Indemnity Company | Hopson, Mario and Regina | 1/24/2017 | 617 W. Willcox Avneue Peoria, Illinois | $68,548.93 |
| bb. | Allstate Indemnity Company | Kalangari, Ramprasad and Uasha | 1/31/2018 | 699 Fairhaven Drive Hanover Park, Illinois | $103,000.00 |
| cc. | Allstate Indemnity Company | Mohammad, Niaz | 4/25/2017 | 670 Legends Drive Carol Spring, Illinois | $35,232.58 |
| dd. | Allstate Indemnity Company | Pulido, Jacquline and David | 9/17/2016 | 1049 Heron Circle Joliet, Illinois | $27,823.85 |
| ee. | Allstate Insurance Company | White, Stephanie A. | 11/20/2016 | 18227 South Aida Court Homewood, Illinois | $54,969.69 |
| ff. | Allstate Property and Casualty Insurance Company | Rowland, Jacqueline | 3/21/2017 | 3022 Hillcrest Drive Cedar Falls, Iowa | $122,590.16 |
| gg. | Allstate Insurance Company | Young, Steve and Joanne | 4/6/2014 | 162 Elm Ridge Drive North Liberty, Iowa | $5,896.11 |
| hh. | Encompass Home and Auto Insurance Company | Chun, Alfred and Marissa | 12/26/2015 | 6600 Tusculum Road Bethesda, Maryland | $33,568.61 |
| ii. | Encompass Home and Auto Insurance Company | Fribush, Richard and Hope | 1/25/2016 | 1224 Statewood Road Reisterstown, Maryland | $81,086.70 |
| jj. | Allstate Insurance Company | Liess, Barbara | 12/18/2014 | 6820 Wisconsin Avenue Bethesda, Maryland | $25,594.34 |
| kk. | Encompass Home and Auto Insurance Company | Markovych, Oleksandt | 6/24/2015 | 11029 Candlelight Lane Potomac, Maryland 20854 | $118,140.42 |
| ll. | Allstate Insurance Company | McQueen, Jr., Franklin and Lydia B. | 7/11/2016 | 4413 Pen Lucy Road Baltimore, Maryland | $58,410.62 |
| mm. | Allstate Insurance Company | Saman, Isam and Nuha | 11/14/2016 | 3403 Cohassett Avenue Annapolis, Maryland | $39,461.40 |
| nn. | Allstate Property and Casualty Insurance Company | Stritzinger, Amy J. | 12/30/2015 | 215 Maple Leaf Drive Rising Sun, Maryland | $73,191.91 |
| oo. | Allstate Insurance Company | Tokpah, Bendu | 12/2/2016 | 300 Chapel Court, Apt. 319 Walkersville, Maryland | $17,955.35 |
| pp. | Allstate Vehicle and Property Insurance Company | Adair, Louis and Candy | 3/14/2017 | 5092 Kasemeyer Road Bay City, Michigan | $7,915.88 |
| qq. | Allstate Property and Casualty Insurance Company | Evans, Kenyietta (Thompson) and Darius | 10/11/2015 | 17640 Evergreen Road Detroit, Michigan | $24,814.67 |
| rr. | Allstate Property and Casualty Insurance Company | Grzebyk, Joseph and Nancy | 4/12/2017 | 6409 Whitby Garden City, Michigan | $14,314.88 |
| ss. | Allstate Property and Casualty Insurance Company | Kosanke, Patrick and Deanna | 3/27/2017 | 20995 Santia Court Clinton Township, Michigan | $66,547.46 |
| tt. | Allstate Vehicle and Property Insurance Company | Louis, Brian S. and Rene | 6/6/2017 | 5866 Hipp Street Taylor, Michigan | $23,548.49 |
| uu. | Allstate Vehicle and Property Insurance Company | Robinson, LuQuandra | 10/19/2015 | 18580 Huntington Avenue Harper Woods, Michigan | $280,803.94 |
| vv. | Allstate Property and Casualty Insurance Company | Sirrine, Thomas J. | 4/29/2015 | 1016 North River Road Alma, Michigan | $3,769.40 |
| ww. | Allstate Property and Casualty Insurance Company | Stapleton, Wayne and Tonja | 2/7/2016 | 1605 Newcastle Gross Pointe, Michigan | $99,507.09 |
| xx. | Allstate Vehicle and Property Insurance Company | Collins, Justin and Lauren | 11/18/2015 | 3734 Sieve Road Villa Ridge, Missouri | $68,114.11 |

| | | | | | |
|---|---|---|---|---|---|
| yy. | Allstate Indemnity Company | Drazic, Jone and Mark | 10/6/2014 | 21604 Chancellor Road<br>Elkhorn, Nebraska | $3,551.03 |
| zz. | Allstate Property and Casualty Insurance Company | Laymon, Judi and David | 12/30/2014 | 6523 Bryce Woodlands Street<br>Las Vegas, Nevada | $37,345.07 |
| aaa. | Allstate New Jersey Insurance Company | Boozer, Edward I. and McClain, Linda | 1/6/2015 | 15 Hastin Lane<br>Willingboro, New Jersey | $12,551.85 |
| bbb. | Allstate New Jersey Insurance Company | Brinckman, Dirk and Delphine | 9/7/2013 | 188 Parkside Drive<br>Princeton, New Jersey | $36,458.84 |
| ccc. | Allstate New Jersey Insurance Company | Cazeau, Venise | 6/12/2012 | 156 Lake Street<br>Englewood, New Jersey | $10,449.73 |
| ddd. | North Light Specialty Insurance Company | LaCicero, Adam and Carly | 3/28/2017 | 128 Elizabeth Avenue<br>Lavallette, New Jersey | $24,787.61 |
| eee. | Allstate New Jersey Insurance Company | Makres, Demetrios W. and Susan L. | 12/27/2016 | 13 Bedford Drive<br>Egg Harbor Twnp, New Jersey | $30,574.74 |
| fff. | Allstate Indemnity Company | Chang, Michelle X. and John Gao | 12/16/2016 | 95 Richmond Blvd., Unit 45<br>Ronkonkoma, New York | $28,956.26 |
| ggg. | Allstate Insurance Company | Jordan, John and Kathleen | 8/13/2016 | 46 Locust Court<br>Staten Island, New York | $34,758.65 |
| hhh. | Allstate Insurance Company | Ryan, DaryL T. and Kristi L+C69 | 9/23/2017 | 30 Pine Avenue<br>Wynantskill, New York | $29,074.14 |
| iii. | Allstate Vehicle and Property Insurance Company | Zadok, Israel and Lisa | 10/14/2016 | 2809 Avenue R<br>Brooklyn, New York | $108,243.29 |
| jjj. | Allstate Insurance Company | Bryant, Warren Eugene | 9/10/2016 | 9368 Kennebec Road<br>Willow Springs, North Carolina | $73,053.66 |
| kkk. | Allstate Vehicle and Property Insurance Company | Brown Jr., Kennard and Nanthela | 11/27/2017 | 925 South Brinker Avenue<br>Columbus, Ohio | $16,041.75 |
| lll. | Allstate Vehicle and Property Insurance Company | McCraney, Harriett | 8/8/2016 | 1184 Winton Avenue<br>Akron, Ohio | $33,726.64 |
| mmm. | Allstate Insurance Company | Miller, Susan | 11/22/2016 | 3913 Germania Street<br>Cincinnati, Ohio | $8,466.76 |
| nnn. | Allstate Vehicle and Property Insurance Company | Livandovskiy, Deonna | 2/7/2017 | 13415 South 155th Drive<br>Clackamas, Oregon | $45,141.04 |
| ooo. | Allstate Vehicle and Property Insurance Company | Anapolsky, Joseph and Sharon | 12/18/2017 | 141 Sheldrake Drive<br>Paoli, Pennsylvania | $50,000.00 |
| ppp. | Allstate Property and Casualty Insurance Company | Bazile, Fabienne and Radway, Ricardo L. | 10/3/2017 | 5139 Ash Drive<br>Pocono Summit, Pennsylvania | $27,686.10 |
| qqq. | Allstate Insurance Company | Bearinger, Lisa Young | 11/21/2017 | 12 Rampart Drive<br>Chesterbrook, Pennsylvania | $50,000.00 |
| rrr. | Allstate Insurance Company | Bostard, Melissa and Timothy | 9/10/2017 | 534 James Street<br>Turtle Creek, Pennsylvania | $61,643.24 |
| sss. | Allstate Indemnity Company | Chavan, Sandeep and Pallavi | 1/30/2017 | 6348 Powder Horn Court<br>Bensalem, Pennsylvania | $12,804.10 |
| ttt. | Allstate Vehicle and Property Insurance Company | Dorrian, Margaret E. | 2/27/2017 | 75 South Harwood Avenue<br>Upper Darby, Pennsylvania | $52,225.88 |
| uuu. | Allstate Insurance Company | Filipovski, Vera and Aleksandar | 1/22/2017 | 2907 Cedar Lane<br>Tobyhanna, Pennsylania | $109,470.36 |
| vvv. | Allstate Vehicle and Property Insurance Company | Holder, Christopher and Rebecca | 12/11/2016 | 919 Academy Place<br>Pittsburgh, Pennsylvania | $1,929.67 |
| www. | Allstate Insurance Company | Hurlock, Ronald | 2/26/2017 | 77 South Harwood Road<br>Upper Darby, Pennsylvania | $134,197.41 |

| | | | | | |
|---|---|---|---|---|---|
| xxx. | Allstate Vehicle and Property Insurance Company | Mulligan, Mike and Dawn | 1/5/2018 | 621 Moreboro Road<br>Hatboro, Pennsylvania | $200,000.00 |
| yyy. | Allstate Vehicle and Property Insurance Company | Nordo, Phillip and Theresa | 10/5/2017 | 15116 Kallaste Drive<br>Philadelphia, Pennsylvania | $41,999.89 |
| zzz. | Allstate Insurance Company | Shaddick, Janet | 8/25/2017 | 1115 Sixth Street<br>Beaver, Pennsylvania | $83,633.15 |
| aaaa. | Allstate Insurance Company | Zamichieli, Robert and Cindy | 8/15/2017 | 5023 Rising Sun Drive<br>Douglasville, Pennsylvania | $25,857.28 |
| bbbb. | Allstate Property and Casualty Insurance Company | Zean, Mabaindu | 11/4/2017 | 1047 Springfield Road<br>Darby, Pennsylvania | $100,000.00 |
| cccc. | Allstate Vehicle and Property Insurance Company | Hoyuela, Ramon and Rodriguez, Ramona | 12/21/2016 | 1214 North Maple Street<br>Alton, Texas | $9,244.60 |
| dddd. | Allstate Indemnity Company | Jacob, Michael E. and Tami T. | 9/18/2013 | 1117 Westview Drive<br>Lynchburg, Virginia | $156,821.40 |
| eeee. | Allstate Vehicle and Property Insurance Company | Burk, Karen and Price, Laura | 3/9/2013 | 420 S. Baldwin Street, Apt. 2<br>Madison, Wisconsin | $25,991.30 |
| ffff. | Allstate Insurance Company | Hansen, Gary and Debra | 1/21/2014 | 5564 S. Lorene Avenue<br>Milwaukee, Wisconsin | $36,598.55 |
| gggg. | Allstate Indemnity Company | Koenig, Russell and Carrie | 3/19/2014 | 115 North 72nd Street<br>Milwaukee, Wisconsin | $11,783.63 |
| hhhh. | Allstate Property and Casualty Insurance Company | Trent, Marianne and James S. | 11/9/2014 | 8543 20th Avenue<br>Kenosha, Wisconsin | $17,642.66 |